IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LILLIE LEMIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 03-1304-T/An |
| | ) | |
| REITTER & SCHEFENACKER, | ) | |
| | ) | |
| Defendant. | ) | |

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Lillie Lemire, a former employee of the defendant, Reitter & Schefenacker, filed this action alleging sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* Plaintiff also asserts a claim of intentional infliction of emotional distress under Tennessee law. The defendant has filed a motion for summary judgment and the plaintiff has responded.

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

In her complaint, plaintiff alleges that she was sexually harassed by three co-workers, Alan Leonard, Corey Porter and Jesse James ("J.J.") Jacob. In her deposition, plaintiff testified that she was harassed by Alan Leonard three times, on April 2, April 16, and April 29, 2003. Corey Porter, allegedly harassed plaintiff once in February 2003, and then put his

2

arm around her on July 17, 2003. J.J. Jacob allegedly harassed plaintiff in October 2003. Plaintiff alleges that although she reported the harassment to her superiors, no corrective action was taken.

The evidence in the record shows that the defendant, a Michigan limited partnership that supplies automotive lighting products and components to automobile manufacturers, has a manufacturing facility located in Selmer, Tennessee. (1st Churchwell Aff. ¶ 2.) Plaintiff became a permanent employee at that facility on July 17, 2001. During her employment, plaintiff primarily worked on the Mercedes Benz line assembling parts for exterior mirrors. (Pl.'s Dep. at 88-89.)

At the time of her hiring or shortly thereafter, plaintiff received a copy of defendant's Employee Handbook and signed an attendance form acknowledging attendance at defendant's training on that handbook. (Pl.'s Aff. ¶ 2.) The handbook contained a sexual harassment policy which provided that any employee who believed he or she had been subjected to sexual harassment should file a written complaint with the Manager of Human Resources or any other member of the Human Resources department, the Managing Director, or the Director of Manufacturing. (1st Churchwell Aff., Ex. 1.) The policy further provided that a manager or supervisor who became aware of any sexual harassment should report it to the Manager of Human Resources and take appropriate corrective action. Id.

Plaintiff testified in her deposition that in February 2003, co-worker Corey Porter

wanted her to go to a nearby motel and have sex with him. (Pl.'s Dep. at 127-28.)[1] Plaintiff testified that she was "pissed" about the comment and told Porter "it would never happen." (Pl.'s Dep. at 129.) On the first day of her deposition, plaintiff testified that she never reported that February incident. (Pl.'s Dep. at 131.) However, on the second day of her deposition, plaintiff testified that she reported the incident when it happened to Paula Hughes in the Human Resources department. (Pl.'s Dep. at 179.)

On March 3, 2003, plaintiff filed a complaint against three female co-workers for making fun of a personal problem she was having. (Pl.'s Dep. at 30, 35-37.) Thereafter, plaintiff began to experience various conflicts with her co-workers. (Pl.'s Dep. at 37.) Consequently, she started keeping a diary in which she documented many of the events and conversations that occurred at work. (Pl.'s Dep. at 38-39; Def.'s Mem. Ex. C.)

Plaintiff testified that on April 2, 2003, co-worker Alan Leonard allegedly asked her to raise her jacket, which she had tied around her waist, "so he could see my ass." Plaintiff refused, then turned around and walked off. Plaintiff testified that she reported this incident when it happened to Paula Hughes in Human Resources. (Pl.'s Dep. at 111-14.) On April 16, 2003, another incident occurred with Leonard, although plaintiff testified that she could not remember the details. In her diary, however, she documented the event:

> 11:55 AM   I had walked over to the water cooler by maintance [sic]. I had to fill up my water bottle. Allen [sic] Leonard says, I see you got the black jacket off around your waist. Now I can see what you got. Allen [sic] says, <u>Nice ass</u>!

---

[1] Porter denies plaintiff's allegations. (Porter Aff., p. 3.)

4

(Def.'s Mem., Ex. C, p. 0004.) Plaintiff testified that she said something about this April 16 incident to J.J. Jacob, (Pl.'s Dep. at 117-18), but did not report it to anyone else at the time. (Pl.'s Dep. at 122.) The last incident involving Leonard occurred on April 29, 2003. In her diary, plaintiff wrote:

> Allen [sic] Leonard came up to me at Station 2A Mer. Ext. right hand. Allen said: I see your [sic] not wearing your black jacket. Allen said "where [sic] you afraid that Lori Plunk was going to pinch your ass. I said you are awful Allen. Allen said: Did you know that she was gay. I don't know Allen. Allen asked, "Me" Are you that way. I said, what are you trying to say. Allen said, I'm not trying to say anything. I'm sure your [sic] not Allen. I said bye Allen.

(Def.'s Mem., Ex. C, p. 0004, 0014.) Plaintiff testified that she reported this incident on July 15, 2003 during a meeting with the Human Resources Manager, Mark Ivey. (Pl.'s Dep. at 122.)

On July 6, 2003, plaintiff signed a complaint of discrimination with the EEOC, in which she complained only about general harassment, not sexual harassment, by her co-workers. (Def.'s Mem., Ex. D.) Plaintiff met with an EEOC investigator on July 10, 2003 for an interview. The investigator's notes from that interview reflect "no cause" for a charge. Specifically, the notes show that plaintiff claimed she was being harassed by her female co-workers because they were talking about her personal business. The EEOC investigator's notes further reflect that plaintiff was told that such general harassment was not a "covered basis" under Title VII, and that plaintiff did not file a formal EEOC charge at that time. (Def.'s Mem., Ex. E.)

5

On July 12, 2003, plaintiff was involved in a verbal altercation with a co-worker, Jennifer King, while working on the Mercedes line. The incident was investigated by Ivey, the Human Resources Manager. In his affidavit, Ivey states that during his investigation, plaintiff's co-workers complained about the problems her personality conflicts were causing on the line, and that plaintiff was not pulling her weight. Ivey then met with plaintiff and her supervisor, Jason Rodotz, on July 15, 2003. Ivey's documentation of that interview reflects that plaintiff expressed the belief that everyone was out to get her and that nobody liked her. (Ivey Aff. ¶¶ 2-4, Ex. 2.)

Also during the July 15, 2003 meeting with Ivey, plaintiff reported the April 2, 2003 incident with Leonard, stating that she believed she had been sexually harassed. Plaintiff signed a brief statement regarding that harassment. (Ivey Aff. ¶¶ 8-9, Ex. 4.) When asked why she had not reported the incident earlier, plaintiff told Ivey that she felt it would not have done any good. She told him that she had reported the incident only to her line leader, J.J. Jacob. (Ivey Aff. ¶ 10.)

Ivey states in his affidavit that he met with Leonard about plaintiff's allegation, which Leonard denied. Ivey advised Leonard that the complaint was serious and that sexual harassment would not be tolerated. He reviewed with Leonard the company's sexual harassment policy and warned him that the situation would be monitored and that any further reports of misconduct would result in disciplinary action. Leonard also was warned not to retaliate against the plaintiff. (Ivey Aff. ¶¶ 11-13.)

6

On July 17, 2003, plaintiff reported to Ivey that Corey Porter had put his arm around her. When Ivey and Jason Rodotz met with Porter the next day, Porter said that he meant nothing by his action, and would not do it again. Ivey reminded Porter of the company's policy against sexual harassment and warned him not to touch plaintiff again. (Ivey Aff. ¶¶ 16-18, Ex. 5.)

On approximately July 18, 2003, plaintiff faxed to the EEOC copies of her diary entries documenting the alleged harassment by Leonard in April 2003. A formal charge of harassment was filed on August 19, 2003. The charge states:

> I have experienced harassment from my co-workers. The harassment consisted of comments and jokes made concerning my personal problems. The managers and supervisors knew about the harassment but did not engage in prompt, remedial measures. I also experienced sexual harassment from a co-worker. I complained but no action was taken against this individual.
>
> I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Def.'s Mem., Ex. H.) The charge was dismissed and a Notice of Right to Sue issued immediately, on August 21, 2003.

Plaintiff further testified that in October 2003, her line leader, J.J. Jacob, said that "he was going to rip my clothes off. He called me a bitch and told me that he could [f****] the [s***] out of me." Plaintiff said nothing and walked away. (Pl.'s Dep. at 132-35, 150-51.) Plaintiff did not report this incident to anyone. (Pl.'s Dep. at 132-35, 156.)

In order for the Court to have jurisdiction over a Title VII claim, the plaintiff must first exhaust administrative remedies. Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th

7

Cir. 1991) (citing Love v. Pullman Co., 404 U.S. 522 (1972)). However, a Title VII complaint is not "limited to the exact words of the EEOC charge, but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Farmer v. ARA Serv., Inc., 660 F.2d 1096, 1105 (6th Cir. 1981); see also Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998).

In plaintiff's EEOC charge, filed on August 19, 2003, she alleged that she had been sexually harassed by a single unnamed co-worker, specifically referring to "this individual." (Def.'s Mem., Ex. H.) However, the complaint in this case alleges that plaintiff was harassed by three different individuals:

> During plaintiff's employment, she was continuously harassed by the defendant. Lemire was subjected to lewd comments, unwanted sexual advances, by Allen [sic] Leonard, Corey Porter and Jessie [sic] James Jacob."

(Compl. ¶ 8.) The complaint does not allege an exact time frame for any of the incidents of harassment.

Plaintiff testified in her deposition that she was harassed by Jacob on only one occasion, in October 2003. (Pl.'s Dep. at 132-35, 150-51.) This was well after she filed her EEOC charge on August 19, 2003. Thus, any EEOC investigation "reasonably expected to grow out of the charge" could not have included the alleged conduct by Jacob. There is no evidence that plaintiff has ever made the alleged harassment by Jacob the subject of an EEOC charge. Therefore, plaintiff's claims arising out of Jacob's alleged conduct in

8

October 2003 are not actionable under Title VII.[2] The claims will be addressed on the merits, however, as plaintiff has also alleged a violation of the THRA.

Title VII[3] provides that an employer may not lawfully "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The "terms, conditions, and privileges of employment" may include requiring a person to work in a discriminatorily hostile or abusive environment. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64 (1986). However, such harassment is actionable only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." 477 U.S. at 65 & 67 (internal brackets and quotation marks omitted). See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 78 (1998).

In order to establish a hostile work environment claim against an employer the plaintiff must show: (1) membership in a protected class; (2) subjection to unwanted harassment; (3) that the harassment was based on protected-class membership; (4) that it

---

[2] Plaintiff also testified in her deposition that she was sexually harassed by two other individuals, Chris and Travis. However, plaintiff has failed to include in the complaint any allegations regarding harassment by these individuals, and they will not be considered by the Court. See Peake v. Brownlee, 339 F. Supp. 2d 1008, 1013 n.5 (M.D. Tenn. 2003).

[3] The Tennessee Supreme Court has stated that the THRA generally is to be viewed as "coextensive with federal law" and that the legal analysis under the statute generally is the same as that under Title VII. See Parker v. Warren County Util. Dist., 2 S.W.3d 170, 172-73 (Tenn. 1999); Bennett v. Steiner-Liff Iron & Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992).

unreasonably interfered with the plaintiff's work performance, creating a hostile work environment; and (5) the existence of employer liability. See Fleenor v. Hewitt Soap Co., 81 F.3d 48, 49 (6th Cir. 1996); Rabidue v. Osceola Refining Co., 805 F.2d 611, 619-20 (6th Cir. 1986). Withe regard to the fifth element, when the sexual harassment claim is based on the actions of a co-worker, the employer is liable if the employer knew or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 873 (6th Cir. 1997); Fleenor, 81 F.3d at 50; Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994).

The defendant first argues that summary judgment should be granted because the plaintiff cannot show that the harassment of which she complains was sufficiently severe or pervasive to alter the conditions of her working environment. In Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993), the Supreme Court reaffirmed the holding of Meritor, explaining that the work environment must be both objectively hostile or abusive, *i.e.*, one that a reasonable person would find hostile or abusive—and one that the victim subjectively perceives as abusive. 510 U.S. at 21. "This standard takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Id.

In Williams v. General Motors Corp., 187 F.3d 553 (6th Cir.1999), the Court of Appeals affirmed a "totality of the circumstances" approach, stating that "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of

10

action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." 187 F.3d at 562. See also Burnett v. Tyco Corp., 203 F.2d 980, 982-83 (6th Cir. 2000). "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000). Relevant factors "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. See also Faragher, 524 U.S. at 787-88. Title VII is not a "general civility code for the American workplace." Burnett, 203 F.3d at 982.

In this case, between February 2003 and the filing of the complaint in November 2003, plaintiff testified that she had been harassed on six occasions; twice by Porter, three times by Leonard and once by Jacob. In only one of these incidents was plaintiff touched, and that was when Porter put his arm around her on July 17, 2003. There is no evidence that plaintiff considered this incident at all physically threatening or humiliating. The other incidents were verbal only, involving crude, offensive comments such as "nice ass," statements by both Porter and Jacob about having sex with plaintiff, and Jacob's reference to plaintiff as a bitch. There is no evidence that these incidents unreasonably interfered with plaintiff's work performance.

The Court finds that plaintiff has failed to establish a genuine issue of material fact

11

regarding whether the harassment in this case was sufficiently severe or pervasive to alter the conditions of her working environment.

Defendant next argues that even if the harassment could be considered severe or pervasive, the plaintiff cannot show that she subjectively regarded her working environment as abusive. There are affidavits in the record from some of plaintiff's co-workers in which it is stated that plaintiff herself frequently engaged in sexually explicit conversation at work. (Dunaway Aff.; Walker Aff.; King Aff.). Plaintiff admits that she was disciplined for sexually explicit language on one occasion, (Def.'s Mem., Ex. O), but denies that it was something she frequently talked about at work. (Pl.'s Dep. at 93-102.) Given this testimony, the Court finds that there are genuine issues of material fact regarding whether plaintiff subjectively regarded her working environment as abusive.

Defendant further contends that summary judgment should be granted because plaintiff cannot demonstrate that there are material facts in dispute regarding whether the defendant knew or should have known of the alleged harassment and failed to take appropriate corrective action.

As stated *supra*, the first incident of harassment complained of is the incident with Corey Porter in February 2003. In her deposition, plaintiff first testified that she did not report the incident, (Pl.'s Dep. at 131), but when the deposition was resumed several days later, she altered her testimony, stating that she reported the incident at the time it happened to Paula Hughes in Human Resources. (Pl.'s Dep. at 179.) The latter statement is

12

contradicted by Hughes' affidavit, in which she states that she did not begin working at the defendant's Selmer facility until March 17 or 18, 2003, and that plaintiff never made any reports of sexual harassment to her. (Hughes Aff. ¶¶ 1, 5.)

In response to the defendant's motion for summary judgment, plaintiff has now submitted her affidavit, in which she states that she reported the February 2003 incident with Porter to Donna Butler, another former Human Resources Manager. (Pl.'s Aff. ¶ 5.) However, the affidavit of defendant's Payroll and Benefits Administrator, Tina Churchwell, indicates that Butler left the defendant's employment in October 2002. (2nd Churchwell Aff. ¶ 3.) Thus, it appears that plaintiff could not have reported the Porter incident to Butler in February 2003.

In light of this strong evidence that neither Hughes nor Butler was employed by the defendant in February 2003, plaintiff's repeated alteration of her testimony about reporting Porter's harassment is insufficient to overcome her original testimony that she did not, in fact, report this incident.

As to the alleged harassment by Alan Leonard in April 2003, plaintiff testified in her deposition that she reported the April 2 incident to Paula Hughes. (Pl.'s Dep. at 111-14.) Again, this statement is contradicted by Hughes' affidavit, which indicates that plaintiff never reported any sexual harassment to her. (Hughes Aff. ¶ 5.) Plaintiff's testimony also is contradicted by her own diary entry regarding this incident, a copy of which she submitted to the EEOC in support of her charge of discrimination. (Simpson Aff., Ex. 2; Pl.'s Aff.,

13

Ex. 2.) A party may not create a genuine issue of material fact by contradicting statements given to the EEOC. See Martin v. Boeing-Oak Ridge Co., 244 F. Supp. 2d 863, 873 n.6 (E.D. Tenn. 2002). In her diary entry plaintiff wrote only that she reported the April 2 incident to her line leader, Jacob. Id. Jacob was not a supervisory employee with the ability to take corrective action. See Brown v. Signal Mt. Nursery, 286 F. Supp. 2d 904, 916-17 (E.D. Tenn. 2003).

Plaintiff testified in her deposition that the April 16, 2003 incident with Leonard was reported only to Jacob. (Pl.'s Dep. at 117-18). She testified that the last incident with Leonard, which occurred on April 29, 2003, was reported to Ivey on July 15, 2003. (Pl.'s Dep. at 122.)[4] Ivey promptly investigated, warning Leonard that such actions would not be tolerated and that any future misconduct would lead to disciplinary action. (Ivey Aff. ¶¶ 11-13.)

Plaintiff again attempts to bolster her claim with her affidavit, in which she now states that she reported each of the April incidents with Leonard to her supervisor, Jason Rodotz, when they occurred. (Pl.'s Aff. ¶ 10.) However, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997). Therefore, this assertion in plaintiff's affidavit

---

[4] Plaintiff testified that she reported the April 29 incident with Alan Leonard to Ivey. However, Ivey's affidavit contains a description of the incident reported by plaintiff, and it appears that she may have reported the April 2 incident rather than the one occurring on April 29.

14

cannot be considered.

Discounting plaintiff's improper attempts to alter her statements, the Court finds that plaintiff has failed to demonstrate that she reported Leonard's harassment to anyone in a supervisory position before bringing it to Ivey's attention on July 15, 2003.

On July 17, 2003, plaintiff reported to Ivey that Porter had put his arm around her. Ivey immediately investigated and warned Porter not to touch plaintiff again. (Ivey Aff. ¶¶ 16-18.) The last incident, involving J.J. Jacob, was never reported to anyone. (Pl.'s Dep. at 132-35, 156.)

The competent evidence in the record shows that on the only two occasions that plaintiff reported to Ivey that she had been sexually harassed, he took prompt and effective corrective action. Therefore, the material facts are not in dispute on this element of plaintiff's claim.

Plaintiff has failed to demonstrate that the alleged sexual harassment was sufficiently severe or pervasive to alter the conditions of her working environment. She also has failed to show that the defendant knew or should have known of the alleged harassment but failed to take corrective action. Thus, the Court concludes that the defendant is entitled to judgment as a matter of law on plaintiff's Title VII and THRA claims.

Finally, the defendant also seeks summary judgment on plaintiff's state law claim of intentional or reckless infliction of emotional distress. Under Tennessee law, the elements of a claim for intentional infliction of emotional distress are: (1) the conduct complained

15

of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury. Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000) (citing Bain v. Wells, 936 S.W.2d 618, 622 (Tenn.1997)).

The Tennessee Courts have quoted approvingly from this passage of the Restatement (Second) of Torts, § 46 cmt. d:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

See, e.g., Bain, 936 S.W.2d at 622-23; Dunn v. Moto Photo, Inc., 828 S.W.2d 747, 751 (Tenn. Ct. App. 1991). "Liability for mental distress injuries 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003) (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (Tenn. 1966)).

The Court finds that the defendant's conduct in this case does not rise to the level necessary to support a claim for intentional or reckless infliction of emotional distress. Plaintiff's claim is brought only against the company, not her individual co-workers. The evidence shows that each time plaintiff properly reported sexual harassment, corrective

16

action was taken. There is no evidence whatsoever that any supervisory or management employee acted intentionally or recklessly to cause plaintiff emotional distress.

The Court concludes that the defendant also is entitled to judgment as a matter of law on plaintiff's claim of intentional or reckless infliction of emotional distress.

For all of the foregoing reasons, the defendant's motion for summary judgment is GRANTED in its entirety. The Clerk of Court is directed to prepare a judgment.

IT IS SO ORDERED.

_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_15 August 2005_
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 52 in case 1:03-CV-01304 was distributed by fax, mail, or direct printing on August 17, 2005 to the parties listed.

---

Kaye G. Burson
RUTLEDGE & RUTLEDGE
1053 W. Rex Road
Ste. 101
Memphis, TN 38119

Shawn R. Lillie
ALLEN SUMMERS SIMPSON LILLIE & GRESHAM, PLLC
80 Monroe Ave.
Ste. 650
Memphis, TN 38103--246

Heather Webb Fletcher
ALLEN SUMMERS SIMPSON LILLIE & GRESHAM, PLLC
80 Monroe Ave.
Ste. 650
Memphis, TN 38103--246

James M. Simpson
ALLEN SUMMERS SIMPSON LILLIE & GRESHAM, PLLC
80 Monroe Ave.
Ste. 650
Memphis, TN 38103--246

Honorable James Todd
US DISTRICT COURT